Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602-229-5200

C. Bradley Vynalek (#020051)
Brad.Vynalek@quarles.com
Benjamin C. Nielsen (#029689)
Benjamin.Nielsen@quarles.com
Daniel G. Roberts (#033273)
DanielRoberts@quarles.com

*Attorneys for Plaintiff GlobalTranz Enterprises, LLC.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GlobalTranz Enterprises, a limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Ameren Services Company,<br><br>Defendant. | NO.<br><br>**COMPLAINT**<br><br>(Declaratory Judgment; Breach of Contract) |

Plaintiff GlobalTranz Enterprises, LLC ("GlobalTranz"), by and through undersigned counsel, for its claim for relief against Defendant Ameren Services Company ("Ameren," and with GlobalTranz, the "Parties"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is a case for declaratory judgment under 28 U.S.C. §§ 2201 and 2202, and for breach of contract.

2.      GlobalTranz and Ameren entered into certain contracts with each other in 2017 and 2018, described more fully below, pursuant to which GlobalTranz was to (and did) provide Ameren with freight and transportation solutions, and Ameren was to pay GlobalTranz for those services when invoiced by GlobalTranz.

3.      Recently, Ameren has claimed – without legal justification or support – that

GlobalTranz has overcharged Ameren for services, for which GlobalTranz now purportedly owes Ameren millions of dollars. The precise number alleged has varied arbitrarily over time, but it is approximately between six and nine million dollars as of the most recent discussions between the Parties.

4.     GlobalTranz denies these allegations entirely.  And, in fact, GlobalTranz has demonstrated to Ameren, with explicit reference to the governing contracts as well as the years-long course of dealing between the Parties, that it did not overcharge Ameren as claimed and does not owe Ameren the amounts claimed by Ameren.

5.     Moreover, Ameren has failed to pay several invoices to GlobalTranz in accordance with the terms of the governing agreements, and is therefore in breach of those agreements. On information and belief, Ameren has intentionally chosen not to pay invoices in an effort to "setoff" amounts it (wrongfully) believes GlobalTranz has overcharged it, but the pertinent agreements specifically forbid such setoffs.

6.     The reality is that Ameren has misconstrued and misinterpreted various contractual provisions and their legal effect on the Parties' relationship, and has failed to live up to its contractual obligations. Ameren disagrees with GlobalTranz's assessment of the Parties' legal rights and obligations under the Agreements.

7.     An actual and justiciable controversy exists between the Parties arising out of their respective rights and obligations under their contractual relationship.

8.     GlobalTranz therefore seeks from this Court a declaration as to the rights and legal relations between it and Ameren.

9.     GlobalTranz also seeks damages for Ameren's breaches of the governing agreements and failure to make timely payments to GloblaTranz as required by the parties' contractual relationship.

## THE PARTIES

10.     GlobalTranz is a limited liability company existing under the laws of the State of Delaware with its principal place of business at 7350 North Dobson Road, Scottsdale, Arizona 85256. GlobalTranz is a leading third-party logistics provider dedicated to

QB\159788.00066\69991094.1

improving how businesses ship freight while gaining control and visibility of their supply chain. GlobalTranz's sole and managing member is WWEX UNI TopcoHoldings, LLC a Delaware limited liability company.

11. Ameren is a corporation existing under the laws of the State of Missouri with its principal place of business at 1901 Chouteau Avenue, St. Louis, Missouri 63103. Ameren is in the business of providing electric and natural gas energy to customers.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the limit of $75,000, exclusive of interest and costs, and, as detailed above, there is complete diversity of citizenship between Plaintiff and Defendant.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims herein occurred in this district, where GlobalTranz is principally located.

## GENERAL ALLEGATIONS

13. GlobalTranz and its predecessor in interest have provided quality service to Ameren and its customers for more than a decade, and GlobalTranz continues to provide such services to this day.

14. During most of that time, the Parties worked collaboratively and transparently together in a symbiotic business relationship.

15. Indeed, Ameren has told GlobalTranz many times over the past several years – including very recently – how happy it is (and has been) with GlobalTranz's services. As a result, Ameren has continued – even as recently as this year – to award GlobalTranz with additional work and opportunities.

16. The current contractual relationship between the Parties is governed by two separate agreements: (1) The Stars Alliance Agreement, dated July 3, 2017, and attached hereto as Exhibit "1"; and (2) the Freight Services Contract, which has an effective date of January 1, 2018, and is attached hereto as Exhibit "2" (collectively, the "Agreements"). The

QB\159788.00066\69991094.1

Agreements are incorporated herein by this reference.

17.     Pursuant to the Agreements, GlobalTranz is to arrange for transportation and/or storage of certain freight on behalf of Ameren (as more specifically set forth in the Agreements), and Ameren is to pay GlobalTranz for these services (as more specifically set forth in the Agreements).

18.     As noted above, the Parties operated pursuant to the Agreements without notable incident for years.

19.     Recently, however, Ameren has suddenly started claiming, out of the blue, that GlobalTranz overcharged Ameren in various ways under the Agreements – to the alleged tune of millions of dollars – and that GlobalTranz has misconstrued the Parties' rights and obligations under the Agreements.   GlobalTranz, of course, disagrees, and Ameren is wrong.

20.     Remarkably, if Ameren's allegations were to be taken as true (which they should not be, as they are demonstrably false), GlobalTranz would owe Ameren two to three times more in purported overcharges than GlobalTranz realized in net revenue from its entire relationship with Ameren under the Agreements.

21.     In other words, Ameren is attempting to construe the Agreements in a manner that would lead to absurd results (and which goes against the Agreements' terms) – absurd results that would force GlobalTranz to provide its services for an unconscionable loss.

22.     Ameren's construction of the Agreements (and the rights and obligations of the Parties) simply makes no sense, and nothing Ameren has stated or provided to GlobalTranz to date supports in any way its alleged damages or legal conclusions.

23.     Indeed, all of Ameren's arguments are belied by common sense, the terms of the Agreements, and the multi-year course of dealing between the Parties.

24.     By way of example, Ameren claims that it should have received reduced rate services, but Ameren and its vendors repeatedly failed to meet certain conditions precedent under the Agreements (which Ameren agreed to at the beginning of the relationship when it willingly entered into the Agreements) – e.g., providing at least 48-hours' notice to

- 4 -

GlobalTranz before a given pick up – to obtain such rates.  Thus, any damages resulting from Ameren's failures are solely the responsibility and fault of Ameren itself.

25.     By way of another example, Ameren claims it has historically paid more than it was required to for certain services because GlobalTranz, on occasion, used trucks other than a standard 48-foot flatbed. But it was Ameren and its vendors that explicitly directed GlobalTranz to use these other types of trucks on many occasions, thus, again, causing its own purported harm.  To put it differently, Ameren was charged properly (and pursuant to the Agreements) based upon its own requests.

26.     Moreover, Ameren's construction of the Agreements presupposes that freight and transportation rates under the Agreements are ironclad and can never be revised, but this notion is at direct odds with industry practice, course of dealings and the Agreements' terms.  *See, e.g.*, Ex. 2 at Ex. A § 6 ("Broker shall invoice Ameren for its services in accordance with the rates, charges and provisions set forth in Appendix D . . . ***and any written supplements or revisions that are mutually agreed to between the Parties.  If rates are negotiated between the Parties and not otherwise confirmed in writing, such rates shall be considered 'written,' and shall be binding, upon [GlobalTranz]'s invoice to Ameren and Ameren's payment to [GlobalTranz]*** . . . .") (emphasis added).

27.     In reality, the Parties regularly negotiated rates that were different from those in the Agreements and Ameren paid invoices reflecting such rates.

28.     Ameren has also argued that average rates under DAT apply that are not contractually required and do not match services provided by GlobalTranz.  In other words, Ameren wants to pay minimal rates for specialized service in a manner neither supported by industry practice nor the Agreements.

29.     Most or all of the individuals at Ameren who were involved in the negotiation and original implementation of the Agreements have left Ameren.  As a result, Ameren lacks the historical knowledge of the Parties' course and dealing, and it is effectively trying to rewrite the Agreements to its own benefit without any lawful basis for doing so.

30.     Furthermore, Ameren claims that it is entitled to repayment of overcharges

QB\159788.00066\69991094.1

stemming from multiple years of service, but most of Ameren's claims would be time-barred as a matter of law even if they had merit (which they do not) – as the Agreements limit overpayment reimbursements to a 180-day limitations period and most of Ameren's claims relative to overpayments fall well outside of this period.  *See* Ex. 2 at Ex. A § 22(c) (effectively incorporating 49 U.S.C. § 13710(A)(3)(b) and 49 U.S.C. § 14705(b)).

31.     In short, Ameren's claims of overpayment and resultant entitlement to reimbursement are without merit and contradict the governing Agreements.

32.     Moreover, Ameren's faulty construction of the Agreements has cast the Parties' legal rights and obligations under the Agreements in doubt moving forward.

33.     Ameren also owes GlobalTranz approximately $1,730,000.00 resulting from Ameren's failure to pay invoices sent to Ameren by GlobalTranz, pursuant to the Agreements and for services actually rendered.

34.     The pertinent agreements require Ameren to pay its invoices "within 2 days of invoice date without deduction or setoff," and Ameren has failed to do so on many occasions.  *See* Ex. 2 at Ex. A § 6.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgement Under 28 U.S.C. §§ 2201 & 2202)

35.     GlobalTranz realleges and incorporates by reference the allegations set forth above in this Complaint as though fully set forth herein.

36.     An actual and justiciable controversy exists between GlobalTranz and Ameren regarding their rights, obligations, and legal relations under the Agreements.

37.     GlobalTranz disputes Ameren's claims of overpayment and entitlement to reimbursement from GlobalTranz, as well as the specific amounts claimed by Ameren.

38.     GlobalTranz disputes Ameren's construction of the Parties' obligations under the Agreement (both looking backward and forward).

39.     GlobalTranz seeks a declaration that it is not obligated to reimburse Ameren for the amounts sought by Ameren, as well as a declaration that GlobalTranz's construction of various provisions in the Agreements is correct under both the Agreements' plain terms

QB\159788.00066\69991094.1

1 and governing law.

2       40.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the

3 respective rights of the parties is necessary and appropriate under the circumstances, in

4 addition to such further necessary or proper relief the Court deems appropriate.

5       41.     Because this is an action arising out of contract, GlobalTranz is entitled to and

6 requests an award of its attorneys' fees and costs pursuant to A.R.S. § 12-341.01.

7                            **SECOND CLAIM FOR RELIEF**

8                               **(Breach of Contract)**

9       42.     The Agreements are binding and enforceable contracts.

10      43.     As described herein, Ameren has materially breached the Agreements by,

11 among other things, failing to timely pay invoices to GlobalTranz in accordance with the

12 Agreements' terms.

13      44.     As a direct and proximate result of Ameren breaching the Agreements,

14 GlobalTranz has been injured in an amount to be proven, but no less than $1,730,000.00

15 plus pre- and post-judgment interest at the highest legal rate until paid in full.

16      45.     This is a contested action arising out of contract.  Accordingly, GlobalTranz

17 is also entitled to an award of its reasonable attorneys' fees and costs pursuant to A.R.S.

18 § 12-341.01, plus pre- and post-judgment interest on those sums at the highest legal rate

19 until paid in full.

20                            **PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiff respectfully requests the Court:

22      1.      Enter judgment against Ameren for direct and consequential damages in an

23 amount to be proven, but not less than $1,730,000.00 plus pre- and post-judgment interest

24 at the highest legal rate until paid in full;

25      2.      Declare that:

26              (a)     GlobalTranz owes Ameren nothing and is therefore not required to

27                      reimburse and/or pay Ameren any amounts for alleged overpayments

28                      under the Agreements;

QB\159788.00066\69991094.1

1        (b)     Ameren's claimed damages are not supported by the Agreements or

2                governing law;

3      2.     Retain jurisdiction over this action until all claims and issues are fully

4 resolved;

5      3.     Award GlobalTranz its attorneys' fees and costs pursuant to the Agreements,

6 A.R.S. § 12-341.01, and any other applicable law; and

7      4.     Grant all such other, further, and additional relief as the Court deems

8 necessary, just, and proper.

9      RESPECTFULLY SUBMITTED this 5th day of September, 2021.

10                              QUARLES & BRADY LLP
                                One Renaissance Square
11                              Two North Central Avenue
                                Phoenix, AZ  85004-2391
12

13

14                              By: */s/ Benjamin C. Nielsen*
                                    C. Bradley Vynalek
15                                  Benjamin C. Nielsen
                                    Daniel G. Roberts
16
                                *Attorneys for Plaintiff*
17                              *GlobalTranz Enterprises, LLC.*

18

19

20

21

22

23

24

25

26

27

28

QB\159788.00066\69991094.1